# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA CARSON,              ) | |
| ) | |
| Plaintiff,              ) | |
| v.                                              ) | Case No. CIV-11-288-RAW-SPS |
| ) | |
| MICHAEL J. ASTRUE,              ) | |
| **Commissioner of the Social**         ) | |
| **Security Administration,**            ) | |
| ) | |
| Defendant.            ) | |

## **REPORT AND RECOMMENDATION**

The claimant Cynthia Carson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## **Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 22, 1957, and was fifty-two years old at the time of the applicable administrative hearing. (Tr. 24, 122). She has a GED and some vocational training in business and computers, and has worked as a nurse aid. (Tr. 139-140). The claimant alleges she has been unable to work since May 31, 2007, due to anxiety and depression; bipolar disorder; back, neck, and hip problems; and two prior automobile accidents. (Tr. 134).

## Procedural History

On June 23, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kilpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated May 5, 2010. (Tr. 11-19). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she

could lift ten pounds frequently and twenty pounds occasionally, sit/stand/walk six hours in an eight-hour workday, but only occasionally climb and stoop, and never reach overhead. Additionally, the ALJ found that the claimant could perform both simple unskilled tasks and detailed semi-skilled tasks, but not complex tasks, and that she could not interact with the general public. (Tr. 15). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there were jobs that she could perform, *i. e.*, light hand bander, bakery racker, and poultry eviscerator. (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to find her panic disorder, post-traumatic stress disorder, and incontinence secondary to bladder descensus to be severe impairments; (ii) by failing to properly assess her credibility; (iii) by failing to properly assess her RFC; and (iv) by improperly finding that she could perform the jobs identified in the written opinion. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons..

The ALJ found that the claimant had the severe impairments of mood disorder, obesity, osteoarthritis, sciatica, hypothyroidism, and cardiac palpitations. (Tr. 13). As for the relevant medical evidence, the claimant received treatment at Carl Albert Community Mental Health Center for bipolar disease and panic disorder, but the records largely discuss the claimant's medication management. (Tr. 201-216, 256-260, 320-329). On July 24, 2008, state reviewing physician Dr. Bernard Pearce completed a Psychiatric Review Technique, finding that the claimant was moderately limited in her activities of

daily living; moderately limited in maintaining social functioning; mildly limited in maintaining concentration, persistence, and pace; and that there was insufficient evidence as to any episodes of decompensation. (Tr. 228). Dr. Pearce wrote that the claimant's activities were restricted, but that they seemed "attributable to physical health concerns rather than mental health issues." (Tr. 230). In completing a mental RFC, Dr. Pearce opined that the claimant could understand, remember, and carry out simple and some, but not all, more complex instructions under routine supervision, and that she would not be able to relate to the general public, but could relate to supervisors and co-workers in an incidental manner. (Tr. 234). On February 2, 2009, Dr. Cynthia Kampschaefer made nearly identical findings to that of Dr. Pearce. (Tr. 269-281). On January 20, 2009, Dr. Patricia Walz examined the claimant and completed a Mental Diagnostic Evaluation. Dr. Walz thought that the claimant's intellectual functioning was in the low average range, and that she had a suspected diagnosis of bipolar II disorder as well as post-traumatic stress disorder secondary to childhood and adult trauma. (Tr. 267). As to the effects of her mental impairments, Dr. Walz stated that the claimant was able to drive and shop independently, had no friends and socialized mostly with her children, had adequate social skills, had clear and intelligible speech, could understand all but complex tasks, concentrated during the examination, persisted well throughout it, and had an average speed of processing information. (Tr. 268).

On August 24, 2008, Dr. Wendell Long completed a consultative examination of the claimant, and his impression was that the claimant had bipolar disease treated adequately at present; incontinence secondary to bladder descensus; marked weight gain

with morbid obesity, which her cardiovascular and chest findings could be attributed to; respiratory problems secondary to childhood asthma; and unexplained pain in her left shoulder. (Tr. 240). Treatment notes from the Stigler Health & Wellness Center indicate that the claimant presented with complaints of back and hip pain, as well as occasional numbness and tingling to her feet, and x-rays revealed arthritis. Her diagnoses included osteoarthritis, hypothyroidism, sciatica, and lumbago. (Tr. 247-253, 304-319). At various places in the record, the claimant also complained of difficulty sleeping at night, which was treated with medication, and the claimant's reports varied. (Tr., *e. g.*, 308, 321). On February 2, 2009, Dr. Lise Mungel completed a physical RFC assessment of the claimant, finding that she could perform light work with only occasionally climbing ladders/ropes/scaffolds and occasional kneeling, with limited reaching ability. (Tr. 288-290). In March 2010, the claimant presented at the emergency room with complaints of left hip pain and pain in her left neck muscles. (Tr. 298).

At the administrative hearing, the claimant testified that she lives with a roommate who cooks for them, that they both do the grocery shopping but she rides on a motorized scooter, that she plays games on the computer, and that she used to attend church but quit because she could not walk up the steps or sit through the service. (Tr. 26-27). As to her physical ailments, the claimant testified that she had gained approximately 60 pounds in the first year after she quit working but has since lost weight; that she has constant pain in her left shoulder, stomach, left hip, lower back, and left leg; that her pain level interferes with her sleep; and that she elevates her feet during the day due to swelling. (Tr. 28-31). Additionally, she stated that she uses an inhaler and a nebulizer for her respiratory

problems, that she thought she could sit or stand for ten minutes, walk approximately thirty feet, that she would not be able to lift a gallon of milk often, and that she has to wear pads for bladder control and frequent uncontrollable diarrhea. (Tr. 33-35). As to her mental impairments, the claimant testifies that she has panic attacks approximately once a day. (Tr. 35).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. Specifically, the ALJ noted the claimant's treatment at Carl Albert Community Mental Health Center, and noted that the claimant reported to a mental health examiner that she quit working to take care of her mother. (Tr. 16). Additionally, the ALJ recounted Dr. Long's assessment and impressions. The ALJ further summarized the state reviewing physicians' assessment that the claimant could do light work with additional limitations, and noted that he agreed with their conclusions. (Tr. 17). The ALJ then found that there was little evidence to support the claimant's allegations of disabling pain, including her own report that she quit working to take care of her mother, and concluded that she was not disabled. (Tr. 17).

The claimant argues that the ALJ erred in failing to classify her panic disorder, post-traumatic stress disorder, and incontinence secondary to bladder descensus as severe impairments. But the ALJ *did find* that the claimant had other severe impairments, and any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the

ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

If a claimant has any severe impairment, the ALJ must "consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, *citing* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The ALJ in this case was therefore required to consider the effects of the claimant's non-severe impairments, *i. e.* panic disorder, post-traumatic stress disorder, and incontinence secondary to bladder descensus in determining her RFC. In her third contention, the claimant asserts that the ALJ improperly assessed her RFC. But the Court does not agree. The ALJ specifically noted the various findings of the claimant's

treating, consultative, and reviewing physicians, specifically the assessments noting PTSD, panic disorder, and incontinence, *then adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The claimant argues that the ALJ's RFC assessment is deficient because the ALJ should have ordered a medical source statement from the claimant's doctors. But where, as here, the ALJ's decision is supported by substantial evidence in the record, the lack of a medical source statement by a physician is not fatal to the ALJ's decision. *See Davis v. Barnhart*, 71 Fed. Appx. 664, 666 (9th Cir. 2003) ("While the ALJ is *generally* required to request that acceptable medical sources provide these statements with their medical reports, the governing regulation states that the lack of the medical source statement will not make the report incomplete.), *quoting* Soc. Sec. R. 96-5p *and* 20 C.F.R. § 404.1513(b)(6) [quotations omitted].

The claimant's second contention was that the ALJ erred in his analysis of her credibility. A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ may disregard a claimant's subjective

complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Here, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and that there existed "very little in the way of actual medical evidence" to support her claims of severe, disabling physical and mental problems. (Tr. 16-17). The ALJ mentioned the applicable credibility analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible. He specifically reiterated the claimant's own reports made in May 2007 and June 2008 that she stopped working to take care of her mother, and concluded that her statements were inconsistent with allegations of disabling pain. (Tr. 17, 135, 265). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's last contention is that she is unable to perform the jobs identified because she cannot perform light work. But as discussed above, the Court finds that

substantial evidence supports the ALJ's determination that the claimant can perform light work. The fourth contention is therefore without merit.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma